UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JULES W.,[1]

      **Plaintiff,**

v.

MARTIN O'MALLEY,
**Commissioner of Social Security,**

      **Defendant.**

Case No. 2:22-cv-2309
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Jules W. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

**I.     PROCEDURAL HISTORY**

On October 11, 2019, Plaintiff filed his applications for benefits, alleging that he has been disabled since June 2, 2012. R. 74–77, 153–66. The applications were denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 96–105, 107–120. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 121. ALJ Kevin Kenneally held a hearing on December 23, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 34–53. In a decision dated March 12, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 2, 2012, Plaintiff's alleged disability onset date, through the date of that decision. R. 17–28. That decision became final when the Appeals Council declined review on March 15, 2022. R. 2–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 15, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[3] On that same day, the case was reassigned to the undersigned. ECF No. 8. The matter is ripe for disposition.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

>Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 52 years old on June 2, 2012, his alleged disability onset date. R. 27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 20.

At step two, the ALJ found that Plaintiff's coronary artery disease status-post two stents, and major depressive disorder were severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 20–21.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 21–26. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a medical lab technician. R. 26–27.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.,* jobs as a dietary aide, a lamination assembler, and a kitchen helper–existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 27–28. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 2, 2012, his alleged disability onset date, through the date of the decision. R. 28.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 18. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule*

*9.1*, ECF No. 15.

IV.   **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On December 18, 2019, Consultant Fred Eisner[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency. R. 54–73. According to Consultant Eisner, Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 61, 71. Addressing Plaintiff's capacities or limitations in connection with sustained concentration and persistence, Consultant Eisner provided this narrative under the heading "MRFC Additional Explanation":

> CL is T 16 60 y/o male alleging chronic depression. Has been involved in mental health services *due to chronic ruminations following his divorce*. He believes he was taken advantage of financially from the divorce and continues to feel he pays too much to his ex. *The ruminations from time to time become very severe*, and most recently he presented himself voluntarily for a psych admission from 10/14/2019 - 10/18/2019. Discharged and followed by treating psychiatrist. *Issues of memory/cognitive capacity are not at issue with this claimant, but rather whether he can maintain CPP in a typical work week. Along those lines, the last two visits to psychiatrist show significant improvement since discharge in October*. The most recent note on 11/19/2019 shows that CL is *feeling more calm, able to sleep. MS is depicted as calm, euthymic, full range affect, denies SI/HI/AVH, goal directed, appeared to stop ruminating about ex-wife, CL believed he had stabilized. Doing well with introduction of Seroquel into his medication regimen, which appears to have stabilized sleep*, along with Trazodone. As in the past, psychiatrist's concern appear rather minimal as the major recommendation is that the CL maintain medication compliance and that he pursue aerobic exercise. *ADLs are similar insofar as they depict ruminations, <u>but are date[d] before the last visit to psychiatrist where he has stabilized</u>. His major complaint continues to be on concentration due to distraction related to his ruminations about his divorce and alimony. His distraction also seems to cause him to be somewhat forgetful about his hygiene and other needs that require his attention.*
>
> In summary, CL retains the ability to learn and execute simple and very complex tasks. *He is distracted by his ruminations which will moderately interfere with CPP*.

---

[4] Consultant Eisner's credentials do not appear in the record.

> *However, with medications, he appears to be stabilized and doing rather well. He would otherwise adapt and get along with others.*

R. 61–62, 71 (emphasis added). Consultant Eisner opined that Plaintiff was not disabled. R. 62, 72.

Consultant Joshua Forsythe[5] reviewed Plaintiff's medical record upon reconsideration for the state agency on July 7, 2020. R. 78–93. Consultant Forsythe agreed with Consultant Eisner that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 84, 92. Addressing Plaintiff's capacities or limitations in the area of sustained concentration and persistence, Consultant Forsythe affirmed Consultant Eisner's narrative explanation and explained further, as follows:

> RECON Claim, worsening of depression not alleged. Recent psych notes reviewed, 6/23/2020 med mgmt. note indicates clmt. *is rx psych meds, he is noted as feeling well*, exercises daily. His mood is subdued but in full range, *he has less ruminations*. Clmt. reports many worries but *overall he appears stable*. RECON AFFIRMATION RECON

R. 84, 92 (emphasis added). Consultant Forsythe also opined that Plaintiff was not disabled. R. 85, 93.

**V.   DISCUSSION**

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of medium work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except Claimant can frequently push, pull, and operate hand controls with the bilateral upper extremities. Claimant can never climb ropes, ladders or scaffolds, and can never be exposed to unprotected heights

---

[5] Consultant Forsythe's credentials do not appear in the record.

9

> and moving mechanical parts. Claimant is limited to performing simple routine tasks, and limited to making simple work related decisions. Claimant can frequently interact with the general public, coworkers, and/or supervisors.

R. 21. Plaintiff argues that substantial evidence does not support this RFC determination because the ALJ failed to incorporate the moderate limitations referred to by the state agency reviewing consultants. *Plaintiff's Brief*, ECF No. 14, pp. 7–9; *Plaintiff's Reply Brief*, ECF No. 18, pp. 3–5. Plaintiff further contends that the ALJ failed to explain how the RFC limitation to frequent interaction with others adequately accommodates his moderate limitations in interacting with others. *Plaintiff's Brief*, ECF No. 14, p. 11. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416. 945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In finding that Plaintiff had the RFC for a limited range of medium work, the ALJ detailed years of record evidence regarding his mental impairments, including, *inter alia*, largely normal mental status examinations from October 2010 through May 2012 with routine medication adjustments that apparently helped control Plaintiff's depression without side effects; Plaintiff's reports in July and August 2012 that he was doing well, had a stable mood, was compliant with medication, and was searching for a job; notations that Plaintiff had not appeared for therapy in November and December 2012, but had consistently participated in therapy on a monthly basis from January 2013 through June 2013 and had no new complaints or remarkable mental status examinations and had complied with his medication regimen, which had not been adjusted; notations that his mood was stable and that he had expressed efforts to seek employment; notations that, although Plaintiff had missed several months of therapy until November 2013 when he reported sadness over financial and legal stressors, there were no abnormal findings and no need to change his medication; Plaintiff's reports in January and February 2014 of improvement in his mood and compliance with his medication regimen with no side effects, and normal findings on mental status examinations; Plaintiff's report in April 2014 of some increased depression with low energy, which prompted a medication adjustment, but generally normal mental status examination findings except for depressed mood; a May 2014 psychological consultative examination that revealed, *inter alia*, deficits in short-term memory and ability to concentrate, and partial insight, but which was otherwise normal; findings that Plaintiff could not calculate serial sevens or count backwards from one hundred by sevens, struggled to spell the word "world" backwards, and could not recall any of three objects after five minutes of interpolated cognitive activity; the fact that the consultative examiner did not

11

identify any specific work-related functional limitations and noted that Plaintiff would not have issues managing his own funds; Plaintiff's report in June 2014 of slight improvement with increased medication; mental status examinations in June and July 2014 that were normal except for depressed mood; the fact that Plaintiff cancelled his August 2014 appointment as well as a number of appointments in 2015; April and June 2015 mental status examinations that were normal except for sad mood; treatment notes in October through December 2015 indicating that his symptoms were controlled with Wellbutrin XL and Lexapro; notation in January 2016 that Plaintiff had a calmer and stable mood; an increase of Abilify in March 2016; normal mental status examinations in March and April 2016; Plaintiff's report in May 2016 that he had missed Lexapro for a couple of days and had subsequently felt depressed; an increase in his medication in July 2016; normal mental status examinations for the remainder of the year despite Plaintiff's subjective reports of sad mood; no new symptoms or issues reported in January 2017; March 2017 treatment notes indicating some casual and passive thoughts of suicide and continuing obsessive thoughts regarding legal troubles, but normal mental status examination; notation that Plaintiff was more calm and not agitated in May 2017; intermittent but unremarkable mental status examinations throughout 2017; treatment history throughout 2018 detailing much of the same complaints and problems, with Plaintiff's thought process centered around financial and legal stressors from his divorce; mental status examinations in January, April, and May 2018 that were consistently unremarkable except for depressed mood; Plaintiff's report in August 2018 that he was feeling better and doing well generally; Plaintiff's explanation in May 2019 that he had missed appointments because he had been busy and he had not received reminders from his therapist but he also reported fluctuating mood and sleep but stated that he was otherwise doing well, was able to cope, and felt comfortable with his medication; Plaintiff's report in August

2019 of positive happenings in his life and normal findings on mental status examination; Plaintiff's report in October 2019 that he felt stable; Plaintiff's voluntary psychiatric admission from October 14, 2019 to October 18, 2019, for suicidal ideations and thoughts about overdosing on medication; notations during the course of that stay indicating that Plaintiff had remained calm, cooperative and compliant, and that symptoms had improved with therapy and medication, that he exhibited no suicidal or homicidal ideations, thought disorder, or delusions, and that his mental status examination at discharge was normal; Plaintiff's report on October 31, 2019, that his hospital stay had been helpful, that his medications had been adjusted and that he was feeling very comfortable; Plaintiff's report in November and December 2019 that he was feeling better with Seroquel and that he was feeling more calm and getting more sleep; his normal mental status examinations during those months; notes from January 2020 reflecting some fluctuating sleep, changing moods, and increase in worry, but Plaintiff's report that he was feeling stable on his current regimen and was able to cope; the February 2020 generally normal mental status examination except for an anxious mood; Plaintiff's report in March 2020 that he was not depressed and was sleeping well and his therapist's observation that Plaintiff sounded more present-focused with fewer ruminations about his fear of health problems; Plaintiff's report in April 2020 that he was feeling better, that his medication was working, that he was not feeling depressed and was not anxious about the COVID-19 virus; his therapist's notations in April, May, and June 2020 that Plaintiff had sounded calm and alert, and that his thoughts were directed; a telehealth session during the same period that indicated that Plaintiff had benefited from exercise and had been able to cope with his medications; Plaintiff's ability during the same period to manage his mood symptoms and care for his children while they attended school virtually. R. 23–25. As to his physical impairments, the ALJ noted Plaintiff's hospitalization

13

from January 29 through January 30, 2020, for complaints of chest pain; a normal diagnostic imaging of the chest; Plaintiff's admission from January 30 to January 31, 2020, for elective left heart catheterization/PCI, with a normal neurologic assessment prior to the catheterization; insertion of two stents; findings of RRA with severe vasospasms, moderate proximal RCA stenosis, seventy-percent early mid LAD stenosis, small LPL2 with ostial CTO, and mildly reduced left ventricle ejection fraction with inferior hypokinesis; generally unremarkable findings status-post procedure; and no evidence of any follow-up with a cardiologist or treatment for ongoing cardiac complaints. R. 25. The ALJ also considered, *inter alia*, the state agency reviewing consultants' opinions and found them "generally persuasive[,]" reasoning as follows:

> The DDS consultants at the initial and reconsideration levels determined claimant had mild limits in understanding, remembering or applying information, interacting with others and adapting or managing oneself, and moderate limitations concentration, persistence and pace. (Exs. B1A, B2A, B7A, B8A). These opinions are generally persuasive because the record demonstrates few remarkable mental status examinations. Given claimant's history of depressive complaints largely stemming from conflict with family members and his reports of avoidance in going out and lacking motivation to perform activities of daily living, the undersigned finds that the record supports moderate limitations in interacting with others.

R. 25–26. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this determination, arguing first that the ALJ "expressed some approval for the" state agency opinions, but failed to incorporate those consultants' moderate mental limitations into the RFC and failed to explain that omission. *Plaintiff's Brief*, ECF No. 14, pp. 7–8. Plaintiff specifically argues that the ALJ's restrictions in the RFC to simple tasks, simple instructions, and frequent interaction with others do not accommodate the state agency consultants' statements of moderate limitations in Plaintiff's ability to maintain attention

and concentration for extended periods and the ability to complete a normal workday and workweek without interruptions form psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. at 8–9; *Plaintiff's Reply Brief*, ECF No. 18, pp. 3–5. According to Plaintiff, these moderate mental limitations would require additional restrictions, such as time off task and a need for unscheduled breaks and that the ALJ did not explain why, after finding the opinions of these consultants to be generally persuasive, he failed to incorporate such additional restrictions into the RFC. *Plaintiff's Brief*, ECF No. 14, pp. 8–9 (citing, *inter alia*, *Annette S. v. Kijakazi*, No. 1:21-cv-2153, 2022 WL 2980982, at * (D.N.J. July 28, 2022)); *Plaintiff's Reply Brief*, ECF No. 18, pp. 4–5 (same).

      Plaintiff's arguments are not well taken. As set forth above, Consultant Eisner specifically explained in his MRFC narrative—statements that were affirmed on reconsideration— that, although Plaintiff suffered from moderate mental limitations, Plaintiff had stabilized, was doing rather well, and could otherwise adapt. R. 62, 72 (finding that Plaintiff "is distracted by his ruminations which will moderately interfere with CPP. *However, with medications, he appears to be stabilized and doing rather well. He would otherwise adapt* and get along with others" and concluding that Plaintiff was not disabled) (emphasis added); *see also* R. 84, 92 (affirming initial findings on remand on July 7, 2020, and noting further that Plaintiff "*has less ruminations*" and "reports many worries but *overall he appears stable*") (emphasis added). In other words, Consultant Eisner opined that Plaintiff's medications effectively managed his moderate limitations to the point that Plaintiff was doing well, had stabilized, was therefore able to "learn and execute simple and very complex tasks." *See id*.[6] Accordingly, the

---

[6] In this regard, the MRFC explanation regarding Plaintiff's moderate mental limitations and abilities in the present case is distinguishable from *Annette S. See Annette S.*, 2022 WL 2980982, at *7–8. Accordingly, Plaintiff's reliance on that case is unavailing and does not require remand.

ALJ, who recounted generally normal mental status examinations and stabilization with medication and who found the state agency opinions generally persuasive, sufficiently accommodated these opined limitations in the RFC when restricting Plaintiff to, *inter alia*, "simple routine tasks[] and . . . making simple work related decisions." R. 21; *see also Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) (""[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'"); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."); *Long v. Kijakazi*, No. 20-CV-6336, 2022 WL 1204131, at *14 (E.D. Pa. Apr. 22, 2022) (concluding that the ALJ provided a valid explanation for finding that the claimant is capable of performing simple tasks where the ALJ "repeatedly pointed out Plaintiff's 'normal' mental status examinations[,]" "emphasized Plaintiff's ADLs, which included such tasks as childcare for three children (including a one-year-old), house cleaning, woodworking, laundry and shopping[,]" and the claimant's "progress notes consistently showed full orientation, alertness, logical thought processes, fair or normal insight and judgment, and intact reality testing, decision making, attention, concentration, and memory").

Plaintiff also argues that the ALJ's purported failure to accommodate his moderate limitations in concentration, persistence, or maintaining pace violated the agency's Program Operations Manuel System ("POMS"). *Plaintiff's Brief*, ECF No. 14, p. 9; *Plaintiff's Reply Brief*, ECF No. 18, p. 3. POMS, however, "lack[s] the force of law and create[s] no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *see*

*also Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996) ("These regulations [POMS] do not have the force of law.") (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)).

Plaintiff goes on to contend that the ALJ's hypothetical questions posed to the vocational expert were flawed because they did not include any of the moderate mental limitations found by the state agency reviewing consultants; therefore, Plaintiff argues, "the jobs provided by the vocational expert in response to the ALJ's hypothetical questions do not constitute substantial evidence." *Plaintiff's Brief*, ECF No. 14, p. 9. Plaintiff's argument is not well taken. Here, the ALJ's hypothetical question posed to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 21, 49–51. The vocational expert responded that the jobs of dietary aide, lamination assembler, and kitchen helper could be performed by such an individual. R. 50–51. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions posed to the vocational expert is based on his assertion that not all of his alleged impairments were addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

Finally, Plaintiff complains that the ALJ found that Plaintiff had a moderate limitation in his ability to interact with others, but did not explain why he crafted an RFC for frequent interaction with general public, co-workers, and supervisors. *Plaintiff's Brief*, ECF No. 14, p. 10. Plaintiff specifically contends that the ALJ's failure to explain how frequent interaction sufficiently accommodates his moderate social limitations precludes judicial review. *Id*. The Court is not persuaded that this issue requires remand. As a preliminary matter, it is Plaintiff who

bears the burden of proof at step four, and he has not explained why, in light of the specific facts of this case, this restriction does not accommodate his moderate limitation. *See id.*; *see also Grimes v. Kijakazi*, No. CV 20-1367, 2022 WL 604865, at *1 n.3 (W.D. Pa. Feb. 28, 2022) (finding, *inter alia*, "there is nothing inherently inconsistent with the" ALJ's limitation of frequent interaction with supervisors and finding a state agency opinion "very persuasive" that the claimant had a moderate limitation in his ability to interact with others); *cf. Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020 ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted). In any event, as the Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, pp. 10–11, any error in this regard is harmless because the DOT descriptions for two of the representative jobs contained in the Dictionary of Occupational Titles ("DOT") and identified by the vocational expert—*i.e.*, lamination assembler and kitchen helper—have a "People" category of level 8. R. 27; *see also* DICOT 726.687-026, 1991 WL 679636 (lamination assembler); DICOT 318.687-010, 318.687-010 (kitchen helper). The Court of Appeals for the Third Circuit has recognized that a level 8 in the "People" category of the DOT is the lowest rating in this category. *Tracey v. Comm'r Soc. Sec.*, 760 F. App'x 121, 124 (3d Cir. 2019). "A job with a social interaction level of '8' means that 'the degree of relation to people required for that position is [n]ot [s]ignificant.'" *Abigail L. v. Kijakazi*, No. CV 21-2275, 2022 WL 16362468, at *13 (D.N.J. Oct. 27, 2022) (quoting *Scott C. v. Comm'r of Soc. Sec.*, No. 20-109, 2021 WL 2682276, at *5 (D. Vt. June 30, 2021)). Accordingly, Plaintiff has not persuaded this Court that remand is required on this basis.

VI.  **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 2, 2024                                          *s/Norah McCann King*
                                                             NORAH McCANN KING
                                                             UNITED STATES MAGISTRATE JUDGE